**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**SHERRY MONTGOMERY,**

               **Plaintiff,**

               **v.**

**TOWN OF COLONIE et al.,**

               **Defendants.**
_____

**1:14-cv-1077
(GLS/CFH)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:**<br>Law Offices of Elmer Robert Keach, III, P.C.<br>One Pine West Plaza - Suite 109<br>Albany, NY 12205 | ELMER R. KEACH, III, ESQ.<br>MARIA K. DYSON, ESQ. |
| **FOR THE DEFENDANTS:**<br>Friedman, Hirschen Law Firm<br>100 Great Oaks Blvd.<br>Suite 124<br>Albany, NY 12203 | CAROLYN B. GEORGE, ESQ. |

**Gary L. Sharpe
Senior District Judge**

# **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff Sherry Montgomery commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourth Amendments and municipal liability against defendant Town of Colonie and certain of its police officers: defendants Steven H. Heider, Jennifer Oliver, Daniel Belles, and Jacques Tremblay.[1] (*See generally* Am. Compl., Dkt. No. 50.) Pending is defendants' motion for summary judgment. (Dkt. No. 31.[2]) For the reasons that follow, defendants' motion is granted in part and denied in part.

## **II. Background**

### **A. Facts**[3]

On June 10, 2013, at about 12:51 A.M., Tremblay and another Town of Colonie police officer drove, in a marked police car, into the parking lot

---

[1] At all times relevant to this action, Heider was chief of police, Belles was a sergeant, and Oliver and Tremblay were police officers. (Am. Compl., Dkt. No. 50 ¶¶ 5-8; Dkt. No. 52 ¶¶ 4-7.)

[2] Defendants' motion seeks, in the alternative, dismissal under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 31.) Because the parties briefed the motion as one for summary judgment, (Dkt. No. 31, Attach. 22; Dkt. No. 44; Dkt. No. 49, Attach. 1), the court treats it solely as such.

[3] Unless otherwise noted, the facts are undisputed.

2

of the Super 8 motel located at 1579 Central Avenue, Albany, New York. (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 32.) As a known location for illegal activity, including drug trafficking and prostitution, the motel is routinely patrolled by Colonie police. (*Id.* ¶ 2.) In the parking lot was a car "backed up to the door of a motel unit." (*Id.* ¶ 3.) Montgomery[4] was driving the car,[5] in which Ronald Montgomery[6] and Tracy Noble were passengers. (*Id.* ¶¶ 3, 5.) The motel room was rented by another companion, Dorothy Cole, who "was walking towards the [car] but quickly turned away when the police vehicle entered the lot." (*Id.* ¶¶ 3-4.)

An identification check by the Colonie police dispatch showed that Montgomery's driver's license was suspended, Ronald Montgomery was on parole, and Noble was the subject of an open warrant.[7] (*Id.* ¶ 6.) Two additional Colonie police officers "heard the call-out on the police radio that officers were 'checking a suspect'" and stopped to offer assistance. (*Id.*

---

[4] Montgomery was then known as Sherry Almashaleh. (Defs.' SMF ¶ 3.)

[5] Montgomery alleges that it was a rental car. (Pl.'s SMF ¶ 15, Dkt. No. 43 at 10.)

[6] Ronald Montgomery is Montgomery's current husband and fiancé at the time. (Dkt. No. 42, Attach. 10 at 22-23, 41.)

[7] The parties disagree as to what time the officers ascertained this information. (Dkt. No. 43 at 2.)

¶ 7.)  Noble was taken to the police station for booking on the warrant[8] and later "submitted to a strip search by a female police officer at the Colonie police lockup[.]"  (*Id.* ¶¶ 8-9.)

A computer was in plain view in the backseat of the car, and a consensual search of the car "turned up a . . . scale containing . . . residue on the front console and a pair of used surgical-type rubber gloves on the floor of the passenger seat, [and a] television set in the trunk."[9]  (*Id.* ¶¶ 10-11.)  No one admitted ownership of the scale.  (*Id.* ¶ 12.)  At about 1:37 A.M., Belles "heard the call-out on the police radio that several of his officers were at the . . . [m]otel" and arrived there about 2:00 A.M.  (*Id.* ¶ 13.)  Officers searched Cole's motel room and found a checkbook belonging to a woman in Albany.  (*Id.* ¶ 14.)  Colonie police asked Albany City police to investigate a possible burglary at that woman's apartment, and Cole and Noble were later arrested by Albany City police and charged with burglary.  (*Id.* ¶¶ 15-16.)

Montgomery alleges that she is a practicing Muslim and her religious beliefs preclude her from being touched by a male who is not her partner.

---

[8] The parties dispute when this took place.  (Dkt. No. 43 at 2.)

[9] Montgomery disputes defendants' contention that the residue was cocaine.  (Dkt. No. 43 at 3.)

(Pl.'s SMF ¶ 1, Dkt. No. 43 at 8.)  She also alleges that she was "pat-frisked by a male police officer who may have been . . . Tremblay," (*id.* ¶ 2), despite her objection to the pat-frisk and her request to be pat-frisked by a female officer, (*id.* ¶ 4).  According to Montgomery, the pat-frisk did not yield any weapons or contraband.  (*Id.* ¶ 8.)

After the pat-frisk, Belles decided to ask Montgomery to undergo a strip search and visual body cavity inspection, and he called in a female officer, Oliver, for that purpose.[10]  (Defs.' SMF ¶ 17.)  Belles directed an officer to speak with Tremblay and Montgomery about consenting to a strip search.  (Dkt. No. 43 at 4; Dkt. No. 49 at 1.)  The parties disagree as to whether Montgomery consented.  (Defs.' SMF ¶ 31; Pl.'s SMF ¶¶ 21, 23, 25, 27-28, 31.)  The parties also disagree as to the Colonie police department's training (or lack thereof) regarding strip searches in the field.  (Pl.'s SMF ¶ 49; Dkt. No. 49, Attach. 1, at 11.)

Oliver conducted a strip search and visual body cavity inspection of Montgomery in the bathroom of the motel room.[11]  (Defs.' SMF ¶ 19.)  Oliver explained the strip search and visual body cavity inspection

---

[10] Montgomery contends that "Tremblay was also involved in the decision to strip search [Montgomery]."  (Dkt. No. 43 at 4.)

[11] Defendants contend that this took place between 2:35 A.M. and 3:01 A.M., (Defs.' SMF ¶ 19), but Montgomery contends that it was "closer to" 3:01 A.M., (Dkt. No. 43 at 4).

5

procedure to Montgomery before it began.  (*Id.* ¶ 22.)  Montgomery removed her clothes one item at a time and handed them to Oliver for inspection, and Oliver did not touch Montgomery's body during the search.  (*Id.* ¶¶ 20, 23.)  Montgomery alleges that she "was required to . . . manipulate her genitals and breasts for a visual inspection by . . . Oliver" and "to place her unclothed buttocks on the ledge of the tub and open her legs so that . . . Oliver could look inside her vagina."  (Pl.'s SMF ¶¶ 44-45.)  Montgomery also alleges that the bathroom was "filthy" and a male officer "was present right outside the door of the bathroom."[12]  (*Id.* ¶¶ 42, 46.)  Cole also underwent a strip search in the bathroom.  (Defs.' SMF ¶ 24.)

"When the investigation was completed," Montgomery was issued a traffic citation for the misdemeanor charge of aggravated unlicensed operation of a motor vehicle in the third degree.[13]  (*Id.* ¶ 32.)  Colonie police also made an unrelated drug arrest in the motel parking lot "as this incident was ending."  (*Id.* ¶ 33.)

B. **Procedural History**

---

[12] The parties dispute how far open the door was.  (Pl.'s SMF ¶¶ 40-41; Dkt. No. 49, Attach. 1 at 8.)

[13] *See* N.Y. Veh. & Traf. Law § 511(1)(a)-(b).

6

Montgomery filed the instant action in September 2014; she amended her complaint in June 2016.  (Compl., Dkt. No. 1; Am. Compl.) Montgomery asserts the following claims under 42 U.S.C. § 1983: (1) Tremblay, Belles, and Oliver, "by preventing [Montgomery] from leaving the motel for a substantial period of time, in the absence of any reasonable suspicion or probable cause that she had committed a crime[,] . . . violated [her] Fourth Amendment [r]ights," (Am. Compl. ¶ 26); (2) Tremblay, Belles, and Oliver violated the Fourth Amendment by strip searching Montgomery, (*id.* ¶¶ 31-36); (3) Tremblay violated the First Amendment by pat-frisking Montgomery despite her objection and request to have a female officer conduct the search, (*id.* ¶¶ 38-42); and (4) the Town of Colonie and Heider are liable under a theory of municipal liability, (*id.* ¶¶ 44-49).

Pending is defendants' motion for summary judgment.  (Dkt. No. 31.)

### III.  <u>Standard of Review</u>

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*,

827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. Discussion

### A. First Amendment Claim

Montgomery claims that the pat-frisk performed by Tremblay, a male officer, violated her First Amendment right to free exercise of religion. (Am. Compl. ¶¶ 38-42; Dkt. No. 44 at 22-23.) Tremblay is entitled to summary judgment as to this claim because of qualified immunity.[14]

"Qualified immunity shields law enforcement officers from § 1983 claims for money damages provided that their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware." *Zalaski v. City of Hartford*, 723 F.3d 382, 388 (2d Cir. 2013). Either of two prongs will establish qualified immunity: if the officer's conduct did not violate a constitutional right of the plaintiff, or if the right in question was not clearly established at the time of the officer's actions. *See id.* Courts may address either prong first. *See id.* at 388-89.

---

[14] Although defendants raise qualified immunity as a defense, (Dkt. No. 31, Attach. 22 at 11-16), they do not do so squarely in the context of Montgomery's free exercise claim. The court, however, has the "power to grant summary judgment *sua sponte* . . . based upon the defense of qualified immunity." *Doyle v. Coombe*, 976 F. Supp. 183, 187 (W.D.N.Y. 1997), *aff'd*, 159 F.3d 1346 (2d Cir. 1998). And, in any event, Montgomery had an opportunity to, and did, address defendants' argument that her First Amendment claim "lacks merit." (Dkt. No. 31, Attach. 22 at 16-19; Dkt. No. 44 at 22-23).

8

"In deciding whether a right was clearly established, [the court] ask[s]: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013) (internal quotation marks and citation omitted).

Here, none of those questions can be answered affirmatively. Montgomery does not cite a single authority holding that a police officer violates the First Amendment by performing a cross-gender pat-frisk of an observant Muslim.[15] Indeed, cases involving similar claims applied qualified immunity. *See J.H. v. Bratton*, 248 F. Supp. 3d 401, 413 (E.D.N.Y. 2017) (applying qualified immunity where "[p]laintiff points to no authority . . . that 'clearly established' that requiring a female arrestee to remove her religious head covering for an official . . . photograph in the presence of male officers would be a violation of the arrestee's rights under

---

[15] The only three cases cited by Montgomery—*Forde v. Baird*, 720 F. Supp. 2d 170 (D. Conn. 2010), *Brooks v. Jackson*, No. 11 Civ. 6627, 2013 WL 5339151 (S.D.N.Y. Sept. 23, 2013), and *Rivera v. Smith*, 63 N.Y.2d 501 (1984)—involve prisoners. (Dkt. No. 44 at 22-23, 23 n.29.) *Forde* did not even reach a First Amendment analysis. 720 F. Supp. 2d at 182. *Brooks* applied a prisoner-specific standard in analyzing a *pro se* free exercise claim. 2013 WL 5339151 at *12. And *Rivera* examined whether the New York Constitution (not the U.S. Constitution) was violated, and, in any event, involved random pat-frisks of prisoners. 63 N.Y.2d at 507, 515.

9

the First Amendment"); *Soliman v. City of New York*, 15-CV-5310, 2017 WL 1229730, at *5 (E.D.N.Y. Mar. 31, 2017) (applying qualified immunity where plaintiff did not "cite a single authority holding that a police officer violates the First Amendment by removing the headscarf of an unconscious woman before . . . transportation to a hospital, even if the woman turns out to be an observant Muslim.").

No rational jury could conclude that Montgomery's right to be pat-frisked by a female officer was "clearly established" at the time of the incident, and thus summary judgment is granted for Tremblay on the basis of qualified immunity.[16]

## B. False Imprisonment Claim

Montgomery brings a false imprisonment claim alleging that her Fourth Amendment rights were violated.[17] (Am. Compl. ¶¶ 25-29.) The elements of a false imprisonment claim under 42 U.S.C. § 1983 are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was

---

[16] Having so decided, the court need not address the alternative prong of the qualified immunity analysis—*i.e.*, whether a constitutional violation occurred at all. *See Coollick v. Hughes*, 699 F.3d 211, 221 (2d Cir. 2012).

[17] The heading of Montgomery's first cause of action is "[u]nreasonable [w]arrantless [s]eizure/[f]alse [a]rrest." (Am. Compl. at 7.) Technically, the correct term here is false imprisonment. *See Wallace v. Kato*, 549 U.S. 384, 388-89 (2007). In any event, there is no pragmatic difference between false imprisonment and false arrest; "[f]alse arrest is simply false imprisonment accomplished by means of an unlawful arrest." *Jenkins v. City of New York*, 478 F.3d 76, 88 n.10 (2d Cir. 2007).

10

conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotation marks and citation omitted).

There are "differing levels of police-citizen encounters, . . .and the extent to which police intrusions are authorized" depends on the facts. *McClellan v. Smith*, No. 1:02-CV-1141, 2009 WL 3587431, at *8 (N.D.N.Y. Oct. 26, 2009), *aff'd sub nom. McClellan v. City of Rensselaer*, 395 F. App'x 717 (2d Cir. 2010). What begins as a voluntary public encounter between officer and citizen may progress to a *Terry* stop and later to an arrest. *See id.* at *8-9. If each level of police-citizen encounter is justified by the circumstances, and if police act reasonably, there is no Fourth Amendment violation. *See id.* This is necessarily a fact-intensive analysis. *See id.* at *9.

Here, myriad factual issues preclude summary judgment.[18] To begin with, whether Montgomery was detained or free to leave is at issue. (Pl.'s SMF ¶¶ 17-20, 22, 26.) If, at some point, Montgomery reasonably believed

---

[18] The court also notes that defendants failed to address Montgomery's false imprisonment claim in their motion for summary judgment. The court nonetheless addresses the issue because defendants requested summary judgment as to "[Montgomery]'s claims against them." (Dkt. No. 31, Attach. 22 at 22.)

11

that she was not free to leave, it is unclear what defendants reasonably knew at that point. If, for example, defendants had probable cause at the time that Montgomery was no longer free to leave, that would provide a complete defense to Montgomery's false imprisonment claim. *See McClellan*, 2009 WL 3587431, at \*6. But the timing of events—including when defendants ascertained that Montgomery's driver's license was suspended—is unclear. (Defs.' SMF ¶ 6; Dkt. No. 43 at 2.) The court cannot determine, on this factual record, which level of police-citizen encounter was occurring at what time nor whether defendants' conduct was justified. Thus, summary judgment as to Montgomery's false imprisonment claim is denied.[19]

## C. Strip Search Claim

Montgomery claims that the strip search she underwent violated her Fourth Amendment rights. (Am. Compl. ¶¶ 31-36.) As with her false imprisonment claim, factual issues abound, and summary judgment is inappropriate.

---

[19] Defendants did not raise the defense of qualified immunity as to Montgomery's false imprisonment claim. (Dkt. No. 31, Attach. 22 at 11-16.) But even if they had, given the inchoate factual record, the court cannot say that "no reasonable jury, viewing the evidence in the light most favorable to [Montgomery], could conclude that the defendant[s'] actions were objectively unreasonable in light of clearly established law." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (internal quotation marks and citation omitted).

It is true that "[s]o long as the police do not coerce consent, a search conducted on the basis of consent is not an unreasonable search" and does not violate the Fourth Amendment. *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir. 1995). But one of the biggest factual disputes is whether Montgomery consented to the strip search. (Dkt. No. 31, Attach. 22 at 8-11; Dkt. No. 44 at 8-14; Pl.'s SMF ¶¶ 21-23, 25, 27-28, 31.)

Moreover, other important factual issues are unresolved, including if (or when) Montgomery was or could have been arrested.[20] (Defs.' SMF ¶¶ 6, 11; Dkt. No. 43 at 2, 3; Pl.'s SMF ¶¶ 10, 14, 17, 27, 37.) Whether any such arrest was (or could have been made) for a misdemeanor or a felony is crucial to any analysis of whether the strip search was justified. *Compare Hartline v. Gallo*, 546 F.3d 95, 100 (2d Cir. 2008) ("The Fourth Amendment requires an individualized reasonable suspicion that [a misdemeanor] arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest before she may be lawfully subjected to a strip search.") (internal quotation marks and citation omitted), *with*

---

[20] Montgomery alleges that she "was not under arrest at the time she was strip searched." (Pl.'s SMF ¶ 37.) Even if true, the decision not to arrest does not necessarily render a search unlawful if there was probable cause. *See Layou v. Crews*, No. 9:11-CV-0114, 2013 WL 5494062, at *5, *11 (N.D.N.Y. Sept. 30, 2013); *Evans v. Solomon*, 681 F. Supp. 2d 233, 251 (E.D.N.Y. 2010).

13

*Gonzales*, 728 F.3d at 161 ("Although we have repeatedly held that the police may not conduct a suspicionless strip or body cavity search of a person arrested for a misdemeanor, reasonable officers could disagree as to whether that rule applied to those arrested for felony drug crimes[.]").

Defendants argue that they are entitled to qualified immunity, (Dkt. No. 31, Attach. 22 at 11-14; Dkt. No. 49, Attach. 1 at 8-9), but given the factual disputes surrounding the strip search, (Dkt. No. 44 at 8-18), summary judgment is denied. *See Fowler v. Kingston City Police Dep't*, No. 1:07-CV-00873, 2009 WL 3064775, at *7 (N.D.N.Y. Sept. 22, 2009).

### D. Municipal Liability Claim

Finally, Montgomery brings a claim of municipal liability against the Town of Colonie and Heider under a theory of deliberate indifference.[21] To establish municipal liability, "a plaintiff must show that the violation of h[er] constitutional rights resulted from a municipal custom or policy." *DeCarlo*

---

[21] Montgomery's amended complaint alleges a "violation of constitutional rights under color of state law" by "implementation of municipal policies and practices that directly violate constitutional rights, failure to implement municipal policies to avoid constitutional deprivations[,] and failure to train and supervise employees under color of state law[.]" (Am. Compl. at 10 (capitalizations omitted).) The court construes Montgomery's claim as one for municipal liability under a theory of deliberate indifference because that is what her opposition to summary judgment addresses. (Dkt. No. 44 at 23-27.) Despite the kitchen sink-approach, Montgomery has failed to clearly articulate any other theory of liability under her fourth cause of action. As such, the court questions whether Heider is a proper defendant, but given that discovery is closed and defendants did not address the issue, the court declines to dismiss Heider as a defendant at this juncture. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

*v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotation marks and citation omitted). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Here, the factual disputes are such that a rational jury could find "deliberate indifference." *Id.* Defendants argue that "[a]ll on-scene [defendants] . . . had been trained at the Zone 5 [p]olice [a]cademy" and that Montgomery "has failed to allege, and cannot prove, any specific deficiency in the Town[] [of Colonie's] training of its officers[.]" (Dkt. No. 31, Attach. 22 at 21.) However, Montgomery alleges that defendants "did not receive any training concerning strip searches conducted in the field," which is supported by Belles' deposition testimony.[22] (Pl.'s SMF ¶ 49; Dkt. No. 42, Attach. 6 at 159.) Although defendants offer evidence of "[t]raining materials" regarding strip searches (Dkt. No. 31, Attach. 1 ¶ 2; Dkt. No. 31,

---

[22] Although Belles initially testified that he could not remember having training specifically about strip searches "but that doesn't mean we didn't get one at some point along the way," (Dkt. No. 42, Attach. 6 at 144), he later testified, when asked why there is no training on "what is a legitimate circumstance to do a strip search and what is an illegitimate circumstance to do a strip search," that "[t]here [are] several topics that probably should be trained that aren't, and this is probably one of them," (*id.* at 159).

15

Attach. 9 at 29, 32; Dkt. No. 49, Attach. 1 at 11), Montgomery correctly points out that there is no indication of when or to whom this training outline was provided, (Dkt. No. 44 at 26). The court is mindful that it should not "engage . . . in . . . second-guessing municipal employee-training programs." *City of Canton*, 489 U.S. at 392. But the factual dispute as to whether Town of Colonie officers lack any strip-search training at all precludes summary judgment. *See Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 145-46 (N.D.N.Y. 2006); *Murvin v. Jennings*, 259 F. Supp. 2d 180, 186-88 (D. Conn. 2003).[23]

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 31) is **GRANTED IN PART** and **DENIED IN PART** as follows:

>**GRANTED** as to the third cause of action in Montgomery's amended complaint (Dkt. No. 50 at 9-10); and

>**DENIED** in all other respects; and it is further

---

[23] In *Ahern*, the court granted summary judgment where, unlike here, the plaintiff "offered no proof that [o]fficers . . . [had] insufficient training or were denied any training at all" and "failed to offer any evidence as to the purported inadequacies in the . . . training program." 411 F. Supp. 2d at 145, 146.

**ORDERED** that this case is now deemed trial ready and a trial scheduling order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 30, 2017
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge